**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DEBORAH GRAY, as Next Friend of REBECAH BANUELOS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-cv-00338-JFH** |
| **ACADIA HEALTHCARE COMPANY, INC. AND ROLLING HILLS HOSPITAL, LLC,** | |
| **Defendants.** | |

## ORDER

Before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendants Acadia Healthcare Company, Inc. ("Acadia") and Rolling Hills Hospital, LLC ("Rolling Hills") (collectively, "Defendants") [Dkt. No. 71]. Plaintiff Deborah Gray, as Next Friend of Rebecah Banuelos, filed a Response [Dkt. No. 75] and Defendants filed a Reply [Dkt. No. 77].

## BACKGROUND

Plaintiff Deborah Gray ("Plaintiff") commenced this action on March 20, 2019, in the First Judicial District Court of Rio Arriba County, New Mexico, on behalf of Rebecah Banuelos ("Ms. Banuelos"). Dkt. No. 1. On May 2, 2019, Defendants jointly removed the action to the United States District Court for the District of New Mexico. *Id.* Rolling Hills then filed a Motion to Dismiss or, in the alternative, Motion to Transfer Venue on May 9, 2019. Dkt. No. 8. The Motion to Transfer Venue was granted on October 1, 2019, and the case was transferred to the United

States District Court for the Eastern District of Oklahoma on October 7, 2019.  Dkt. Nos. 30 and 31.

Plaintiff filed a Second Amended Complaint on March 18, 2020, wherein she alleges Ms. Banuelos was in the custody of the New Mexico Children Youth and Families Department ("CYFD") when placed in residential treatment at Rolling Hills' facility in Ada, Oklahoma in December of 2018.  Dkt. No. 67 at ¶¶ 66-67.  Plaintiff contends Rolling Hills is a facility owned by Acadia.  *Id.* at ¶ 6.  While receiving treatment at Rolling Hills, Ms. Banuelos was allegedly sexually assaulted on January 12, 2009 by an unknown staff member and/or resident while in a tv room at the facility.  *Id.* at ¶ 68.  Plaintiff also alleges Ms. Banuelos was raped by a Rolling Hills employee, "Jason H.," in the facility's laundry room sometime between December 13, 2018 and January 30, 2019.  *Id.* at ¶¶ 70-71.  Ms. Banuelos was a minor at the time of the alleged incidents. *Id.* at ¶ 72.

## STANDARD FOR DISMISSAL

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id.* (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563.  Although decided within an antitrust context, *Twombly* stated the pleadings standard for all civil actions.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  For the purpose of making the dismissal determination, a court must accept

all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir.2002).  However, a court need not accept as true those allegations that are conclusory in nature.  *See Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs,* 263 F.3d 1151, 1154–55 (10th Cir.2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

## ANALYSIS

The Court will address each of Defendants' arguments in turn below:

### I.   Proper Party Plaintiff

Plaintiff brings this litigation as Ms. Banuelos' "Next Friend."  "A 'next friend' is one who pursues an action on behalf of the real party in interest, when that person cannot appear on her own behalf for some legitimately recognized reason 'such as inaccessibility, mental incompetence or other disability.'"  *Wallace ex rel. Wallace v. Okla. Dept. of Human Services*, 109 Fed. Appx. 240, 243 (10th Cir. 2004) (unpublished)[1] (citations omitted).  "Where an incompetent person is represented by 'a general guardian, committee, conservator, or other like fiduciary,' that representative is the proper person to sue or defend on her behalf.'"  *Id.* (quoting Fed. R. Civ. P. 17(c)).  "Only if the incompetent person is unrepresented by such a fiduciary may she be represented by a next of friend."  *Id.*  A guardian ad litem is an "other like fiduciary" for purposes of Rule 17(c).  *Id.*

---

[1]  This and all other unpublished decisions are not precedential; they are cited for their persuasive value only.  *See* FED. R. APP. 32.1; 10TH CIR. R. 32.1.

The Supreme Court addressed "next friend" standing under the habeas corpus statutes in *Whitmore v. Arkansas*, 495 U.S. 149 (1990). The Supreme Court recognized that 28 U.S.C. § 2242 provides for "next friend" standing but found that "standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another." *Whitmore*, 495 U.S. at 163.

> First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action . . . . Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate."

*Id.* This concept of "next friend standing" has been applied by courts to proceedings beyond 28 U.S.C. § 2242. *See e.g., S.U. ex rel. v. Youth Care of Utah, Inc.*, 345 F. Supp. 2d 1269, 1270 (D. Utah 2004); *Brown v. Tulsa County Dist. Court*, No. 06-CV-0431, 2007 WL 188271, at *2 (N.D. Okla. Jan. 22, 2007).

Here, Defendants contend Plaintiff is not a proper plaintiff because Ms. Banuelos is not an infant and her signature on the state court petition for appointment of next friend is signed by Ms. Banuelos – indicating she is not incompetent. Dkt. No. 71 at 12-13. Defendants also emphasize the state court petition for appointment of next friend has no allegation that Ms. Banuelos is incompetent, only that Ms. Banuelos' "vulnerability as a result of childhood abuse, [has] rendered her incapable of the maturity and experience necessary to navigate or advocate for her best interests [and] [a]ppointment of a Next Friend under the circumstances is appropriate." Dkt. No. 71-1.

Plaintiff responds she is the proper party in interest because when the action was filed, Ms. Banuelos "was still in the custody of CYFD. The New Mexico Children's Code, Section 32A-1-7(F) *required* a guardian ad litem appointment (Deborah Gray) to pursue claims on Rebecah's behalf." Dkt. No. 75 at 14 (emphasis in original).

4

Incompetency is not the only grounds for appointing a next friend – as recognized by the Supreme Court. *See Whitmore*, 495 U.S. at 163. For example, inaccessibility is another basis for appointing a next friend. *Id.* The New Mexico state court concluded Plaintiff provided an adequate explanation why the real party in interest, Ms. Banuelos, cannot appear on her own behalf to prosecute the action when it entered the Order Appointing Next Friend. Dkt. No. 75-2. The Court is not inclined to second guess District Court Judge Carl Butkus. The Court will permit Plaintiff to proceed as Next Friend under Rule 17(c).

## II.   Alter Ego Claim

Plaintiff first asserts a claim for "alter ego/ instrumentality." Plaintiff alleges Rolling Hills is the alter ego of Acadia. *See* Dkt. No. 67 at ¶¶ 76-99. Defendants contend Acadia is the parent company and owner of Rolling Hills and, as such, Acadia is a member of Rolling Hills. Dkt. No. 71 at 14. Defendants argue a suit or claim cannot be brought against a member of an LLC for the debt or liability of an LLC until judgment is obtained therefor against the LLC and execution thereon returned unsatisfied. *Id.* (citing Okla. Stat. tit. 12, §§ 682(B) and (C)). Plaintiff responds Section 628 is inapplicable to the case at bar and applies only to individual officers, directors, shareholders or members. Dkt. No. 75 at 17. Further, Plaintiff contends she is bringing the suit against Acadia directly, not merely as a result of Acadia's status as Rolling Hills' member. *Id.*

Section 682 provides:

(B) No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which ***he or she*** is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego. Provided, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation, not within the scope of their role as an officer, director or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrence.

5

(C) Members and managers of limited liability companies shall be afforded the same substantive and procedural protection from suits and claims as the protections provided to officers, directors and shareholders of a corporation as set forth in subsection B of this section.

Okla. Stat. tit. 12, § 682 (emphasis added). The plain language of the statute reveals the statute is intended to benefit *individual* officers, directors, shareholders or members.[2] A corporate entity is not a he or she. Additionally, the three (3) published Oklahoma cases citing Section 682(B) all contemplate claims against an individual, not an entity. *See Tyree v. Cornman*, 453 P.3d 497 (Okla. App. 2019); *Maree v. Neuwirth*, 374 P.3d 750 (Okla. App. 2016); *Sauders v. Mangum Nursing Center, LLC*, 377 P.3d 180 (Okla. App. 2016). This Court is unaware of any case wherein a court has addressed the individual/entity distinction and applied Section 682 to prohibit an alter ego claim against a corporate entity for purposes of tort liability.[3]

Additionally, the Oklahoma Supreme Court has recognized, since at least 1981, that: "i[f] one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law." *See Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269, 1275 (Okla. 1981); *Frazier v. Bryan Memorial Hosp. Authority,* 775

---

[2] At the third reading of House Bill 2844, the now current version of 12 O.S. § 682, House Representative Echols, the Bill's author, explained "this bill is to provide protection for owners, shareholders, and directors of LLCs and corporations while operating within the scope of their employment." Oklahoma House Session Legislative Day 24 Afternoon Session, March 10, 2016 at 6:58 p.m. available at okhouse.gov/video/default/aspx. This statement by House Bill 2844's author supports the Court's conclusion that the statute is intended to benefit individuals, not corporate entities.

[3] A similar argument was raised in *Lavoy v. United Services Auto. Assoc.*, No. CIV-14-1379, 2015 WL 1812804, at *1 (W.D. Okla. Apr. 17, 2015). However, Judge Miles-LaGrange did not reach the issue because she concluded plaintiff alleged a direct claim against USAA, the sole shareholder. *See id.* at *2. In *Boatright Family, LLC v. Reservation Center, Inc.*, Judge DeGiusti did grant defendants' motion to dismiss based on Section 682. *See Boatright*, No. CIV-13-192, 2015 WL 2345299, at *4 (W.D. Okla. May 14, 2015). Of the fourteen defendants moving to dismiss, three were entities. *See id.* at *1. However, the individual/entity distinction was not addressed by Judge DeGiusti. *See id.* at *4.

P.2d 281, 288 (Okla. 1989); *Oliver v. Farmers Ins. Group of Companies*, 941 P.2d 985 (Okla.1997).  Considering the express language of the statute coupled with the lack of direction from the Oklahoma Supreme Court or the Oklahoma legislature, this Court is not convinced Section 682(B) was intended to abrogate alter-ego liability with respect to corporate entities.

There are ten (10) factors to be considered when determining whether one corporation is the instrumentality of another.  *See Frazier*, 775 P.2d at 288.  "The question hinges primarily on control."  *Oliver*, 941 P.2d at 987.  Plaintiff has alleged adequate facts to state an alter ego claim.  *See* Dkt. No. 67 at ¶ 89.

## III.   Various Negligence Claims

### A.  Negligence

Plaintiff next alleges Defendants were negligent for a number of reasons:  (1) failing to secure Ms. Banuelos in a safe environment; (2) failing to reasonably exercise custodial control over Ms. Banuelos; (3) failing to reasonably exercise *in loco parentis* powers over Ms. Banuelos; (4) negligently hiring, supervising, and/or retaining control of employees who manage, direct and/or control operations on behalf of Defendants; (5) failing to exercise their authority to control the manner in which work was performed to adequately train their employees and/or agents to keep safe custody of Ms. Banuelos; and (6) failing to have appropriate policies and procedures, or, in the alternative, failing to enforce their policies and procedures.  Dkt. No. 67 at ¶ 101.  Defendants argue Plaintiff's negligence claim fails as a matter of law focusing on Plaintiff's negligent hiring, retention and supervision claim and Plaintiff's theory of respondeat superior.  Dkt. No. 71 at 15-19.  These two theories of negligence are addressed below.  However, Defendants do not address Plaintiff's other allegations of negligence.

The "[t]hree elements essential to a prima facie case of negligence are: (a) a duty owed by the defendant to protect the plaintiff from injury, (b) failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care." *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla. 1982). Plaintiff has alleged Defendants owed Ms. Banuelos a duty, they breached that duty and Plaintiff suffered damages as a result. *See* Dkt. No. 67 at ¶¶ 101-104. At this stage of the litigation, Plaintiff has set forth sufficient allegations to survive a motion to dismiss on the negligence claim.

### B. Respondeat Superior

Plaintiff also alleges Defendants are vicariously liable for the injuries Ms. Banuelos allegedly sustained because Defendants' employees were acting within the course and scope of their employment when they sexually assaulted Ms. Banuelos. Dkt. No. 67 at ¶¶ 105-115. Defendants argue respondeat superior is not a viable claim because the employees' alleged sexual assaults were outside the scope of their employment as a matter of law. Dkt. No. 71 at 17-18. Plaintiff argues the allegations fall within exceptions to the general rule of nonliability for an employee's assault on a third person. Dkt. No. 75 at 22

"*Respondeat superior* is a legal doctrine holding an employer liable for the willful torts of an employee acting within the scope of employment in furtherance of his duties." *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 598 (Okla. 1999). "As a general rule, it is not within the scope of an employee's employment to commit an assault upon a third person." *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, at 1245 (Okla. 1993) (citations omitted). However, this general rule does not apply when the act: (1) is one which is "fairly and naturally incident to the business"; (2) is done "while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the mater's interest"; or (3) arises "from

some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business." *Id.* (citation omitted). *See also N.H.*, 998 P.2d at 598-99. "An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer. *Rodebush*, 867 P.2d at 1245 (citations omitted). "[A]n assertion that an act is accomplished during an employment activity is insufficient to assess liability against the employer unless the act was done to accomplish the assigned work." *N.H.*, 998 P.2d at 599.

In *N.H.*, the Oklahoma Supreme Court held, as a matter of law, that a minister acted outside the scope of his employment when he molested children. *Id.* at 599-600. The *N.H.* Court noted:

> Ministers should not molest children. When they do, it is not part of the minister's duty nor customary within the business of the congregation. Rather than increasing membership, the conduct would assuredly result in persons spurning rather than accepting a faith condoning the abhorrent behavior. No reasonable person would conclude that [the minister's] sexual misconduct was within the scope of employment or in furtherance of the national organization's business. . . . It is inconceivable that [the minister's] acts were of the nature of those which he was hired to perform. Because [the minister] was acting outside the scope of his employment as a matter of law when the molestation occurred, we hold that liability may not be imposed under the doctrine of *respondeat superior*.

*Id.* This holding has been applied to employer-employee situations beyond the religious environment. *See e.g., Baldwin v. SAI Riverside C, LLC*, 326 P.3d 555, 558 (Okla. App. 2014) (car dealership employee striking individual on the back of her knee as a prank was outside the scope of employment); *Koch v. Juber*, No. CIV-13-0750, 2014 WL 2171753, at *4-5 (W.D. Okla. May 23, 2014) (correction officers' alleged sexual assault of inmates was outside the scope of employment); *Hyatt v. Board of Regents of Oklahoma Colleges*, No. CIV-14-511, 2015 WL 521112, at *4 (W.D. Okla. Feb. 9, 2015) (alleged sexual assault perpetrated by security personnel at juvenile rehabilitation program was outside the scope of employment).

Here, Plaintiff alleges that Jason H. raped Ms. Banuelos [Dkt. No. 67 at ¶ 112] and an unidentified staff member "molested, groped and sexually assaulted Rebecah Banuelos" [*Id.* at ¶ 68]. However, sexual assault was not part of any staff member's duties nor is it customary or "fairly and naturally incident to the business" of a psychiatric hospital or a residential treatment center. Such acts certainly would not aid in Ms. Banuelos' treatment. No reasonable person would conclude that the alleged sexual misconduct was within the scope of employment or in furtherance of the psychiatric hospital/residential treatment center's business. It is simply inconceivable that the alleged sexual assaults were of the nature of anything close or incident to the duties any employee was attempting to perform for Defendants' business. The Court finds the alleged acts here to be analogous to those found to be outside the scope of employment as a matter of law in *N.H.*  *See N.H.,* 998 P.2d at 599-600. The Court also finds the allegations here to be distinguishable from those in *Rodebush*.  *See Rodebush*, 867 P.2d at 1246 (wherein the employee was carrying out an assigned task – bathing a patient – when the alleged assault took place).

The Court concludes, as a matter of law, Defendants' employees were not acting within the scope of their employment when they allegedly sexually assaulted Ms. Banuelos. Accordingly, Plaintiff's respondeat superior claim must be dismissed.

## C.  Negligent hiring, retention and/or supervision

Plaintiff alleges Defendants are liable for negligent hiring, retention and/or supervision. Dkt. No. 67 at ¶¶ 116-128. Defendants' position is that this claim should be dismissed because Plaintiff does not provide any factual allegations that Defendants were aware Jason H. or unidentified staff members had a propensity to engage in sexual assault and were unfit or unqualified. Dkt. No. 71 at 19. Plaintiff responds she pleaded sufficient facts to establish the plausibility of her claim. Dkt. No. 75 at 24.

Oklahoma law recognizes a claim for negligent hiring, supervising or retaining an employee. *N.H.*, 998 P.2d at 600. This "theory of recovery is available if vicarious liability is not established." *Id.* "An employer is found liable, if – at the critical time of the tortious incident – , the employer had reason to believe the person would create an undue risk of harm to others." *Id.* "The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage." *Id.*

The allegations in Plaintiff's Second Amended Complaint concerning prior knowledge of Jason H. and the unidentified staff member's propensities to engage in sexual misconduct are: "Upon information and belief, Defendants were aware of Jason H.'s propensity to engage in sexual assault and rape before hiring him and placing Rebecah Banuelos' care and 24-hour watch" [Dkt. No. 67 at ¶ 118]; and "Upon information and belief, Defendants knew that the staff member who sexually assaulted Rebecah Banuelos on January 12, 2019, had a propensity to engage in sexual assault before hiring him or her." [*Id.* at ¶ 119]. Defendants rely on *Hyatt*, 2015 WL 521112, at *3-4, to support their proposition that dismissal is appropriate. In *Hyatt*, the plaintiff alleged defendant failed "to use reasonable care in the care, supervision, treatment, and security of minor residents at the Salt Fork Adventure Program facility." *Id.* at *3. The *Hyatt* Court concluded, this "vague allegation fail[ed] to provide even the minimal amount of facts necessary to state a plausible negligence claim." *Id.*

While Plaintiff's allegations are not replete with facts demonstrating Defendants' prior knowledge, Plaintiff's allegations are more than the allegation in *Hyatt.* This Court must construe the allegations in Plaintiff's Second Amended Complaint as true and in the light most favorable to Plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado,* 493 F.3d at 1215; *Moffett*, 291 F.3d at 1231. As a

result, the Court finds that Plaintiff has stated a claim sufficient to survive the instant Motion to Dismiss.

## D.  Negligence per se

Plaintiff brings a negligence per se claim against Defendants premised on Defendants violating the Oklahoma Child Care Facilities Licensing Act ("OCCFLA"), Okla. Stat. tit. 10, § 401, *et seq.,* and the Inpatient Mental Health and Substance Abuse Treatment of Minors Act, Okla. Stat. tit. 43A, § 5-501 *et seq.*.  *See* Dkt. No. 67 at ¶¶ 153-167.  Defendants argue these claims should be dismissed.

To state a claim for negligence per se, the plaintiff must allege the claimed injury was caused by the violation, was of the type intended to be prevented by the statute, and the injured party must be one of the class intended to be protected by the statute.  *See Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013).

### i.   Oklahoma Child Care Facilities Licensing Act ("OCCFLA")

Defendants argue the OCCFLA does not apply to facilities whose primary purpose is medical treatment. Dkt. No. 71 at 21 (citing Okla. Stat. 10, § 403(11)).  Section 403(11) provides, "the provisions of the [OCCLFA] shall not apply to: . . . facilities whose primary purpose is medical treatment."  However, Plaintiff contends Defendants operate Rolling Hills not only as a hospital but also as a "residential child care facility" which must be licensed by the Oklahoma Department of Human Services.  Dkt. No. 75 at 26.  Defendants do not address Plaintiff's position in their Reply.  *See* Dkt. No. 77 at 8-9.

Under Oklahoma law, a "child care facility" is defined as "any public or private child care residential facility . . . ."  Okla. Stat. tit. 10, § 402(4).  A "residential child care facility" is defined as "a twenty-four-hour residential facility where children live together with or are supervised by

12

adults who are not their parents or relatives." Okla. Stat. tit. 10, § 402(16).  Residential child care facilities must be licensed by the Oklahoma Department of Human Services.  *See* Okla. Stat. tit. 10, § 305(A); *see also* Okla. Att'y Gen. Op. No. 09-15, at *1 (June 16, 2009).  The Oklahoma Department of Human Services has promulgated requirements a residential child care facility must meet.  *See e.g.*, O.A.C. 340:110-3-168 (outlining requirements of residential treatment facilities); O.A.C. 340:110-3-154.1(a)(3)(M) (residential child care facilities must ensure "adequate measures are taken to prevent accidents and to avoid health and safety hazards").

The Court takes judicial notice that "The Anchor at Rolling Hills" is a licensed residential treatment center.[4]  It is undisputed that Ms. Banuelos was living at the Rolling Hills facility in Ada and was supervised by adults who were not her parents or relatives.  The Court rejects Defendants' contention that Defendants are exempt from the OCCFLA.  Additionally, Plaintiff has alleged Defendants violated the OCCFLA.  *See* Dkt. No. 67 at ¶¶ 155-159.  At this stage, Plaintiff has stated a negligence per se claim premised on violation(s) of the OCCFLA sufficient to survive the motion to dismiss.

### ii.  Inpatient Mental Health and Substance Abuse Treatment of Minors Act

Defendants also argue Plaintiff has failed to state a claim for violations of the Inpatient Mental Health and Substance Abuse Treatment of Minors Act ("Mental Health Act") and dismissal is appropriate.  Defendants' position is that the Mental Health Act provides the procedure for filing a petition when a minor requires mental health or substance abuse treatment and is inapplicable to this suit.  Dkt. No. 71 at 22.  Plaintiff responds, "Defendants make no effort to prove through case law or precedent that the statute does not apply, other than to simply state it is 'inapplicable' and

---

[4]  *See* http://residentialchildplacinglocator.okdhs.org/ResidentialLocator/ChildCareFacilities.aspx (search Program Name "Rolling Hills").  The Court may take judicial notice of facts which are a matter of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2016).

it should be dismissed." Dkt. No. 75 at 27. Plaintiff also provides no case law, precedent or citation to the Mental Health Act to demonstrate the Mental Health Act *does* apply to Defendants.

The Mental Health Act establishes the procedures for a parent of a minor, minor sixteen (16) years of age or older, or legal custodian of a minor to be admitted for inpatient mental health or substance abuse treatment. *See* Okla. Stat. tit. 43A, § 5-503. The Mental Health Act does declare it is Oklahoma's public policy to "assure adequate treatment of minors needing mental health treatment or treatment for drug or alcohol abuse" and "protect the rights of consumers hospitalized pursuant to law." *See* Okla. Stat. tit. 43A, § 5-501(B). However, Plaintiff does not allege a specific violation of the Mental Health Act or that Ms. Banuelos' injury was caused by a violation of the Mental Health Act. The Court finds that Plaintiff has failed to state a negligence per se claim premised on a violation of the Mental Health Act.

## IV.    Professional Liability

Plaintiff asserts a claim for "professional liability" against Defendants. Defendants argue it should be dismissed because it is a recitation of Plaintiff's negligence claim. Dkt. No. 71 at 22. Plaintiff incorporates her response to the negligence claim. Dkt. No. 75 at fn. 60. Neither party provides authority that a claim for professional liability is recognized under Oklahoma law. This Court is unaware of any such cognizable claim. Regardless, any such claim would be duplicative of Plaintiff's negligence claim. Therefore, this claim is dismissed.

## V.    Civil Conspiracy

Plaintiff also alleges "Defendants combined together to accomplish the unlawful purpose of defrauding residents and their health insurers." Dkt. No. 67 at ¶ 130. Further, "Acadia facilities have combined together to commit wrongful acts pursuant to conspiracy, vis-à-vis Acadia entities, including Rolling Hills." *Id.* at ¶ 131. Defendants believe since the underlying wrongful act

alleged is fraud, Plaintiff has failed to allege civil conspiracy with sufficient detail, and the claim must be dismissed.  Dkt. No. 71 at 20-21.

"A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or do a lawful act by unlawful means."  *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997). To state a claim for civil conspiracy, plaintiff must allege:  "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  *Allen v. IM Solutions, LLC*, 94 F. Supp.3d 1216, 1223 (E.D. Okla. 2015).  "Participation in a civil conspiracy is not, by itself an actionable tort.  Rather, a civil conspiracy claim requires the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy."  *Id.* (quoting *Nippert v. Jackson*, 860 F. Supp. 2d 554, 567 (M.D. Tenn. 2012)).  The more stringent pleading standard found in Rule 9(b) applies to a civil conspiracy claim premised on fraud.  *See Energy Fluids, Inc. v. Cimarex Energy Co.*, No. CIV-07-653, 2008 WL 2404226, at *1 (W.D. Okla. June 10, 2008); *see also Patel v. Patel*, No. CIV-16-415, 2018 WL 5891748, at *3 (E.D. Okla. Nov. 9, 2018).

Plaintiff does not identify the members of the alleged conspiracy.  Plaintiff alleges: "Defendants combined together" [Dkt. No. 67 at ¶ 130]; "Acadia facilities have combined together" [*Id.* at ¶ 131]; "Jacobs and Acadia have committed fraud" [*Id.* at ¶ 134]; "Defendants have committed fraud" [*See id.* at ¶¶ 135-141]; there is a "civil conspiracy between Jacobs and Acadia" [*Id.* at ¶ 143] and "Defendants' civil conspiracy" [*Id.* at 144].  It is entirely unclear if the members of the civil conspiracy are only the Defendants, Acadia and Jacobs, or Defendants and an unknown number of "Acadia facilities."  Plaintiff fails to allege the members of the civil conspiracy with the requisite specificity.

Plaintiff's Second Amended Complaint also does not sufficiently allege the object to be accomplished.  It is unclear if the object of the alleged civil conspiracy was:  (1) representing Rolling Hills was a safe facility [Dkt. No. 67 at ¶ 133]; (2) to achieve financial benefit by misusing funds and billing for services not provided [*Id.* at ¶ 135]; (3) not appropriately staffing the Rolling Hills facility [*Id.* at ¶ 134]; (4) hiring Jason H. [*Id.* at ¶ 139]; to fill beds at Rolling Hills [*Id.* at ¶ 143]; (5) all of the above; or (6) or something else entirely.  Plaintiff does not sufficiently allege there was a meeting of the minds.  To the extent the allegations that "Defendants combined together" or "Acadia facilities have combined together" is Plaintiff's attempt to allege a meeting of the minds, the Court finds these allegations insufficient.  Plaintiff does not identify when, where or how the meeting of the minds occurred.  The Court concludes the Second Amended Complaint is insufficient to put Defendants on notice of Plaintiff's claim of fraudulent conspiracy.  *Patel,* 2018 WL 5891748 at *3 (dismissing civil conspiracy claim for failing to allege sufficient detail required by Rule 9(b)).  Dismissal of Plaintiff's civil conspiracy claim is proper.

## VI.   **Breach of Fiduciary Duty**

Plaintiff alleges Defendants owed Ms. Banuelos a fiduciary duty and breached it.  *See* Dkt. No. 67 at ¶¶ 190-210.  Plaintiff alleges Defendants were Ms. Banuelos' caretakers, in a "higher position" than Ms. Banuelos, were in a position of trust and confidence, and were her custodians. *Id.* at ¶¶ 195-196 and 201.  Plaintiff states Defendants, breached the fiduciary duty they owed Ms. Banuelos by failing to supervise employees, allowing employees to sexually assault Ms. Banuelos, not reporting the incident and not terminating Jason H.  *Id.* at ¶ 203.  Defendants contend Plaintiff's allegations are simply a reiteration of Plaintiff's general negligence allegations and do not meet the specificity required to state a plausible claim.  Dkt. No. 71 at 22-23.  Defendants do not provide

any authority for their position that a claim for breach of fiduciary duty must be alleged with specificity.

The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages. *Graves v. Johnson*, 359 P.3d 1151, 1155 (Okla. App. 2015). In Oklahoma, "[f]iduciary or confidential relationship has a broad meaning that includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another." *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015). "Such a relationship exists when one person acquires influence over another such that the influenced allows the influencer to substitute his or her will for the influenced's own." *Id.* As to a fiduciary relationship, the Oklahoma Supreme Court has held:

> It is settled law that courts of equity will not set any bounds to the facts and circumstances out of which a fiduciary duty may spring. It includes not only all legal relationships such as guardian and ward, attorney and client, principal and agent and the like, but it extends to every possible case from which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. The relationship need not be legal but it may be either moral, social, domestic or merely personal.

*Lorance v. Patton*, 710 P.2d 108, 111 (Okla. 1985).

"In most instances, the question of a fiduciary relationship is for a trier of fact." *Horton*, 345 P.3d at 364. The Second Amended Complaint alleges Defendants were Ms. Banuelos' fiduciary, custodian and caretaker, and she was placed in a residential treatment at Defendants' facility. Dkt. No. 67 at ¶¶ 67, 201. The Second Amended Complaint also alleges Ms. Banuelos was vulnerable. *Id.* at ¶ 199. Plaintiff alleges Defendants breached the fiduciary duty they owed to Ms. Banuelos. *Id.* at ¶ 203. At the pleading stage, the Court cannot conclude that Plaintiff has failed to state a claim for breach of fiduciary duty.

## VII.    Breach of Contract

Plaintiff asserts a claim against Defendants for breach of contract pursuant to the theory that Ms. Banuelos was a third-party beneficiary to a contract.  Dkt. No. 67 at ¶¶ 212-229.  Plaintiff alleges Rolling Hills entered into a contract with CYFD, Ms. Banuelos was a specifically contemplated beneficiary of the contract, Defendants breached the contract and, as a result, Ms. Banuelos was injured.  *Id.* at ¶¶ 212-221.  Defendants move to dismiss this claim arguing Plaintiff has failed to plead more than a recital of the elements of a breach of contract claim.  Dkt. No. 71 at 24.  Defendants also argue the allegations flow from Plaintiff's negligence claim.  *Id.*  Plaintiff contends she alleged sufficient allegations to state a claim.  Dkt. No. 75 at 29-30.

Oklahoma law provides, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  Okla. Stat. tit. 15, § 29. The third-party beneficiary need not be a party to or be named in the contract to occupy third-party beneficiary status.  *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 610 (Okla. 1992).  The parties' intent controls, "as reflected in the contract which must provide the answer to the question of whether the contracting parties intended that a third person receive a benefit which might be enforced in the courts."  *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981).  To state a claim for breach of contract, a plaintiff must plead facts showing "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach."  *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.2d 834, 843 (Okla. 2001).

Here, Plaintiff does not allege enough facts to support a breach of contract claim.  Plaintiff does not identify any provisions of a contract between CYFD and Rolling Hills that were allegedly breached.  Nor does Plaintiff point to any provision of any contract to establish it was the contracting parties' intent that Ms. Banuelos receive a benefit from the contract.  Plaintiff

allegations are conclusory and unsupported by essential factual averments.  *See Erikson,* 263 F.3d at 1154–55; *Hall*, 935 F.2d at 1109–10.  Therefore, dismissal of Plaintiff's breach of contract claim is appropriate.

## VIII.    Breach of Good Faith and Fair Dealing

Plaintiff also asserts a claim alleging Defendants breached the covenant of good faith and fair dealing contained within the contract of which Ms. Banuelos alleges to be a third-party beneficiary.  Dkt. No. 67 at ¶¶ 231-239.  Defendants move to dismiss the claim asserting that as a matter of law, such a claim only results in damages for breach of contract, not independent tort liability.  Dkt. No. 71 at 24.  In response, Plaintiff argues the allegations in the Second Amended Complaint demonstrate "bad faith and a breach of the implied covenant of good faith and fair dealing."  Dkt. No. 75 at 30.  However, given that Plaintiff's breach of contract claim fails, its claim for breach of good faith and fair dealing necessarily fails as well.  *See Lee v. University of New Mexico*, 449 F. Supp. 3d 1071, 1151 (D.N.M. 2020) (dismissing claim for breach of implied covenant of good faith and fair dealing where breach of contract claim failed).  This claim must be dismissed.

## IX.    Oklahoma Deceptive Trade Practices Act

Plaintiff asserts a claim against Defendants for violation of the Oklahoma Deceptive Trade Practices Act ("ODTPA").  Dkt. No. 67 at ¶¶ 241-242.  Plaintiff alleges Defendants "have engaged in deceptive trade practices by knowingly making false representation as to the characteristics and benefits of services."  *Id.* at ¶ 242.  Defendants argue Plaintiff has failed to state a claim under the ODTPA because there is no private cause of action for consumers under the ODTPA.  Dkt. No. 71 at 26.  Defendants cite to case law for this proposition.  *Id.*  Plaintiff does not respond to this authority.  Dkt. No. 75 at 30-31.

The Oklahoma Court of Civil Appeals has held, "[i]t has been definitively established that [the ODTPA] protect[s] competing business interests and do[es] not present a basis for suit by consumers." *Conatzer v. American Mercury Ins. Co., Inc.*, 15 P.3d 1252, 1254 (Okla. App. 2000); *see also Thomas v. Metropolitan Life Ins. Co.*, 540 F.Supp.2d 1212, 1228 (W.D. Okla. 2008) (dismissing ODTPA claim where there was no allegation the parties were in competition); *Business Loan Express, LLC,* 2008 WL 11338444, at *4 (W.D. Okla. July 30, 2008) (same).

Here, there is no allegation that Plaintiff, or Ms. Banuelos, is in competition with Defendants. The Second Amended Complaint makes clear that Ms. Banuelos was a consumer of Defendants' services. Therefore, Plaintiff has failed to state a claim for violation of the ODTPA against Defendants. The claim must be dismissed.[5]

## X.   Service Warranty Act

Next, Plaintiff alleges Defendants are liable for violating the Oklahoma Service Warranty Act. Dkt. No. 67 at ¶ 243. Defendants argue this claim must be dismissed because Defendants are not in the business of service warranty. Dkt. No. 71 at 27. In response, Plaintiff does not explain how Defendants were in the business of service warranty.

Under the Oklahoma Service Warranty Act, service warranty means:

A contract or agreement for a separately stated consideration for a specific duration to perform the repair or replacement of property or indemnification for repair or replacement for the operational or structural failure due to a defect or failure in materials or workmanship, with or without additional provision for incidental payment of indemnity under limited circumstances, including, but not limited to, failure due to normal wear and tear, towing, rental and emergency road service, road hazard, power surge, and accidental damage from handling or as otherwise provided for in the contract or agreement.

---

[5]  Defendants also interpret Plaintiff's claim for "Unfair Practices Act" as asserting a fraud claim. *See* Dkt. No. 71 at 18-19. Defendants argue the claim must be dismissed because it does not comply with Rule 9(b). *Id.* The Court agrees. To the extent Count VIII of Plaintiff's Second Amended Complaint is intended to assert a separate fraud claim, Plaintiff has failed to state the claim with the requisite specificity and dismissal is appropriate.

Okla. Stat. tit. 15, § 141.2(17).  There is no allegation in the Second Amended Complaint that Defendants and Plaintiff entered into a contract for "the repair or replacement of property or indemnification for repair or replacement for the operational or structural failure due to a defect or failure in materials or workmanship."  The Second Amended Complaint reveals Ms. Banuelos was a resident in a treatment facility.  The claim for violation of the Oklahoma Service Warranty Act is wholly misplaced and must be dismissed.

**XI.    Oklahoma Consumer Protection Act**

Lastly, Plaintiff asserts a claim against Defendants for violations of the Oklahoma Consumer Protection Act ("OCPA").  Plaintiff alleges Defendants violated the OCPA by "advertising, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised."  Dkt. No. 67 at ¶ 244.  Defendants' position is that the OCPA exempts Defendants because they are regulated by the Oklahoma State Department of Health as a licensed hospital and dismissal is necessary.  Dkt. No. 71 at 28 (citing Okla. Stat. tit. 15, § 754(2)).  Section 754(2) provides:

> Nothing in the Oklahoma Consumer Protection Act shall apply to:
>
> Actions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter . . . .

Okla. Stat. tit. 15, § 754(2).  Defendants argue the circumstances here are analogous to those in *Estate of Hicks ex rel. Summers v. Urban E., Inc.*, 92 P.3d 88 (Okla. 2004) (dismissing OCPA claim against nursing home because nursing home was regulated by the Oklahoma Department of Health).  Plaintiff does not respond to Defendants' argument or this authority.  *See* Dkt. No. 75 at 30-31.  The Court takes judicial notice of the fact that Rolling Hills is as licensed psychiatric

hospital in the state of Oklahoma.[6]  Thus, Rolling Hills is subject to the licensing requirements

and regulations outlined in Okla. Stat. tit. 63, §§ 1-701 *et seq.* and Oklahoma Administrative Code

Chapter 667.  The Court concludes Plaintiff's claim for violations of the OCPA is barred by the

plain language of the OCPA.  *See* Okla. Stat. tit. 15, § 754(2).  Plaintiff's OCPA claim must be

dismissed.[7]

## XII.    Discovery dispute

In the Response to the Motion to Dismiss, Plaintiff argues Defendants' alleged discovery

abuses warrant denial of the Motion to Dismiss.  Dkt. No. 75 at 14-15.  The Court notes the proper

inquiry on the Motion to Dismiss is whether the Second Amended Complaint contains enough

facts to state claim to relief that is plausible on its face and whether the factual allegations are

enough to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.  Thus, the

proper inquiry concerns the allegations in the Second Amended Complaint; discovery is irrelevant.

*See Franklin v. Kansas Dept. of Corrections*, 160 Fed. Appx. 730, 733–734, (10th Cir.2005)

(unpublished).  Further, the Local Rules of this Court require that:  "[e]ach motion, application or

objection filed shall be a separate pleading, except where alternative pleading is allowed by law or

these Rules." LCvR 7.1(b).  To the extent Plaintiff's Response is a motion to compel or a motion

for sanctions, it does not comply with the Court's Local Rules.  For these reasons, the Court will

not address the alleged discovery abuses here.

---

[6]  *See* https://www.ok.gov/health2/documents/MFS%20DirectoryofFacilities.eff.04.17.20.pdf  at
64 of 107.  *See also* footnote 3.

[7]  Neither party addresses the fact that Rolling Hills is also regulated by the Department of Human
Services as a residential child care facility.  Therefore, the Court will not address it.  *Mays v.
Colvin*, 739 F.3d 569, 576 & n. 4 (10th Cir. 2014) (declining to address argument not adequately
developed or briefed); *see also Rill v. Saul*, No. 18-cv-673, 2019 WL 2552221, at n. 2 (W.D. Okla.
June 20, 2019).

**CONCLUSION**

Defendants Acadia Healthcare Company, Inc. and Rolling Hills Hospital, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. No. 71] is **GRANTED IN PART AND DENIED IN PART:**

It is **DENIED** as to Plaintiff's alter ego claim;

It is **DENIED** as to Plaintiff's negligence claim;

It is **GRANTED** as to Plaintiff's respondeat superior claim;

It is **DENIED** as to Plaintiff's negligent hiring, retention and/or supervision claim;

It is **DENIED** as to Plaintiff's negligence per se claim premised on violation(s) of the OCCFLA;

It is **GRANTED** as to Plaintiff's negligence per se claim premised on violations of the Inpatient Mental Health and Substance Abuse Treatment of Minors Act;

It is **GRANTED** as to Plaintiff's professional liability claim;

It is **GRANTED** as to Plaintiff's civil conspiracy claim;

It is **DENIED** as to Plaintiff's breach of fiduciary duty claim;

It is **GRANTED** as to Plaintiff's breach of contract claim;

It is **GRANTED** as to Plaintiff's breach of the covenant of good faith and fair dealing claim;

It is **GRANTED** as to Plaintiff's Oklahoma Deceptive Trade Practices Act claim;

It is **GRANTED** as to Plaintiff's fraud claim;

It is **GRANTED** as to Plaintiff's Oklahoma Service Warranty Act claim; and

It is **GRANTED** as to Plaintiff's Oklahoma Consumer Protection Act claim.

DATED this 9th day of October, 2020.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE